United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEL MITCHELL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SKILLZ PLATFORM INC.,<br><br>Defendant. | Case No. 26-cv-00674-AMO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 34 |

This is a putative false-advertising class action involving a mobile gaming platform. Before the Court is Skillz Platform Inc.'s motion to dismiss for lack of personal jurisdiction, lack of subject-matter jurisdiction, and failure to state a claim. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for August 6, 2026, is **VACATED**. *See* Civil L.R. 7-6; Fed. R. Civ. P. 78(b). Having read the parties' papers and carefully considered the arguments therein, as well as the relevant legal authority, the Court hereby **DENIES** the motion to dismiss for lack of personal jurisdiction and lack of subject-matter jurisdiction, and **GRANTS** the motion to dismiss for failure to state a claim.

## I.     BACKGROUND

This section comprises the well-pleaded allegations from the operative First Amended Complaint, which are taken as true and viewed in the light most favorable to Plaintiffs. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Skillz operates a mobile gaming platform. Dkt. No. 22 ("FAC") ¶ 20. The platform allows head-to-head play in mobile games created by third-party developers. *Id.* ¶ 24. Some of its competitions require cash entries and allow players to win cash prizes. *Id.* Others are free and allow players to compete to win "Zs," Skillz's virtual currency. *Id.* ¶¶ 16, 75.

Skillz represents that it is committed to "fair play." *Id.* ¶ 40.  Every time that a player launches a Skillz-powered application, they see a badge which represents that commitment.  *Id.* ¶¶ 39-40.  Below the badge are three additional representations:

> Match with **real players** of equal skill
> Win **real cash prizes** with easy withdrawals
> Compete for real, **no bots** guaranteed

*Id.* ¶ 40.  Plaintiffs contend that those and other similar representations are false or misleading for three reasons.  First, Plaintiffs say that users sometimes play against bots.  *Id.* ¶¶ 66-83.  Second, Skillz allegedly uses "undisclosed matchmaking tools" to sometimes match players of unequal skill levels.  *Id.* ¶¶ 61-65.  Finally, Skillz has allegedly "systematically impeded cash withdrawals."  *Id.* ¶¶ 118-28.

Plaintiffs are three Skillz users.  *Id.* ¶¶ 16-18.  Kel Mitchell lives in California and began playing Skillz games around June 2022.  *Id.* ¶ 16.  Giovanni Garza lives in Texas and began playing in mid-2024.  *Id.* ¶ 17.  Finally, Amy Masiker lives in New York and began playing around August 2021.  *Id.* ¶ 18.  Each has played in Skillz's cash competitions and lost money, ranging from $25 (Garza) to nearly $7,700 (Masiker).  *Id.* ¶¶ 16-18.  Mitchell believes his losses were unfair because "[d]espite playing for a few years, he would sometimes play opponents who would get perfect scores—and outscore him by thousands of points."  *Id.* ¶ 86.  Masiker similarly believes her losses were unfair because "she would almost always lose, and the top 'players' were always the same."  *Id.* ¶ 87.

Plaintiffs advance thirteen claims, most of which are brought only by one of the three plaintiffs.  All assert a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, predicated on wire fraud, 18 U.S.C. § 1343.  Mitchell asserts claims under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; in addition to claims for negligent misrepresentation and unjust enrichment under California law.  Garza asserts a claim under the Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.46; in addition to claims for negligent misrepresentation and unjust enrichment under Texas law.  Finally,

United States District Court
Northern District of California

Masiker asserts claims under N.Y. Gen. Bus. Law ("GBL") §§ 349 and 350; in addition to claims for negligent misrepresentation and unjust enrichment under New York law.

## II.    DISCUSSION

### A.    Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2).  On such a motion, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). But absent an evidentiary hearing, a plaintiff "need only make a prima facie showing of jurisdictional facts." *Id.* (citation omitted).  A plaintiff's undisputed allegations must be taken as true.  *Id.* (citation omitted).  Skillz challenges personal jurisdiction over the claims asserted by Garza and Masiker, since they reside outside of California.  However, both have made a prima facie showing of personal jurisdiction over Skillz.

There are two types of personal jurisdiction: general and specific.  *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025) (en banc).  Garza and Masiker assert the Court has specific jurisdiction over Skillz.  That requires: (1) the defendant to "purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails [it]self of the privilege of conducting activities in the forum"; (2) the claim to "arise[] out of or relate[] to the defendant's forum-related activities"; and (3) exercising jurisdiction to "comport with fair play and substantial justice." *Id.* at 750-51 (citation omitted). The dividing line between purposeful direction and purposeful availment is ambiguous, and personal jurisdiction can be established through either concept.  *Id.* at 751 n.10 (citation omitted). As a result, while "some . . . cases have said that purposeful availment is better suited for contract cases, and purposeful direction for tort cases, this is not a rigid rule." *Doe v. Deutsche Lufthansa*, 157 F.4th 1103, 1111 (9th Cir. 2025) (citations omitted).  Purposeful availment occurs when the defendant "'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between [it]self and residents of the forum" such that it "manifestly has availed [it]self of the privilege of conducting business' in the forum." *Id.* at 1110 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)).

3

Garza and Masiker have made a prima facie showing of Skillz's purposeful availment. "Courts have found that a defendant purposefully availed itself of the forum's protections and benefits when a defendant opened offices and hired employees in the forum." *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 595 (N.D. Cal. 2022) (citations omitted). Here, Plaintiffs allege that "[f]rom 2016 until mid-2023, Skillz's principal place of business was in San Francisco, California." FAC ¶ 20. While Skillz moved its headquarters to Nevada in 2023, "it continued to employ individuals in California in senior marketing and communications positions." *Id.* ¶¶ 12, 20. Those contacts are sufficient to constitute purposeful availment. *See Mewawalla*, 601 F. Supp. 3d at 595; *Deutsche Lufthansa*, 157 F.4th at 1111 (finding purposeful availment in part because defendant had "offices at LAX and SFO" and "dozens of employees in California"); *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1089 (9th Cir. 2023) (finding same where founder initially treated California as his "home base" and returned to California to do business even after becoming a "digital nomad").

Garza and Masiker have also made a prima facie showing of relatedness. "[A] plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505 (9th Cir. 2023). Plaintiffs allege that "[m]any of the marketing decisions, product policy, and consumer-facing communications strategy at issue in this action were devised and executed from California," and that the "algorithms governing matchmaking and withdrawal processing were designed and maintained by California-based engineers and product managers." FAC ¶¶ 12, 22. As a result, false advertising injuries would tend to be caused by Skillz hiring California employees, since some of those employees were tasked with marketing and designing the very features at issue. *See id.*; *Impossible Foods*, 80 F.4th at 1096; *Briskin*, 135 F.4th at 760. Though Skillz contends this is just like *Bristol-Myers Squibb*, where the alleged contacts lacked relatedness, the defendant there did not "create a marketing strategy[,] . . . manufacture, label, package, or work on the regulatory approval of the product" in the forum state. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 259 (2017). By contrast, Plaintiffs allege that the relevant features' design and marketing directly resulted from Skillz's California contacts.

United States District Court
Northern District of California

Once a plaintiff satisfies the first two prongs of the specific jurisdiction test, they have presented a prima facie case, so "the burden shifts to the defendant to present a 'compelling case' that jurisdiction is unreasonable." *Deutsche Lufthansa*, 157 F.4th at 1113 (quoting *Burger King*, 471 U.S. at 477). Because Skillz makes no argument regarding reasonableness, the Court must conclude that it has personal jurisdiction over Skillz.

### B.      Subject-Matter Jurisdiction

A motion to dismiss for lack of Article III standing is evaluated under Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court looks beyond the complaint to extrinsic evidence. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). When a defendant challenges jurisdiction facially, all material allegations in the complaint are assumed true, and the court determines whether the factual allegations are sufficient to invoke the court's subject matter jurisdiction. *Id.*

Skillz contends that Mitchell lacks standing to seek injunctive relief.[1] A consumer has standing to seek an injunction against false advertising if there is a threat of future harm. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). One way to allege such a threat is by pleading the consumer "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 970. Mitchell alleges that he would "use the platform again if the deceptive practices were corrected." FAC ¶¶ 188, 205, 222. And it is reasonable to infer from Plaintiffs' allegations that Mitchell could not easily discover whether Skillz's representations have become truthful. *See, e.g.*, *id.* ¶¶ 63, 81, 119. Thus, he plausibly alleges standing to seek injunctive relief.

### C.      Failure to State a Claim

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual

---

[1] Only Mitchell seeks injunctive relief. *See* FAC ¶¶ 194, 209, 223.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must assume that the plaintiff's allegations are true and draw all reasonable inferences in their favor. *Manzarek*, 519 F.3d at 1031. However, it need not construe conclusory statements or unreasonable inferences as true. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Additionally, where a plaintiff's claims sound in fraud, they must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement to "state with particularity the circumstances constituting fraud."[2] Fed. R. Civ. P. 9(b). Thus, plaintiffs must allege "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 889 F.3d at 964 (citation omitted).

All of Plaintiffs' claims require alleging a false or misleading statement.[3] *See United States v. Jesenik*, 152 F.4th 924, 938 (9th Cir. 2025) (wire fraud); *Davidson*, 889 F.3d at 964-66 (UCL, FAL, and CLRA); *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007) (Cal. negligent misrepresentation); Tex. Bus. & Com. Code Ann. § 17.50(a)(1) (DTPA); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (Tex. negligent misrepresentation); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) (N.Y. GBL Section 349 and 350 claims); *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007) (N.Y. negligent misrepresentation). An additional element of Plaintiffs' claims is reliance and/or causation. *See Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1260 (9th Cir. 2019) (RICO premised on fraud); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (UCL, FAL, and CLRA); *Apollo*, 158 Cal. App. 4th at 243 (Cal. negligent misrepresentation); Tex. Bus. & Com. Code Ann. § 17.50(a)(1)(B) (DTPA); *Fed. Land*, 825 S.W.2d at 442 (Tex. negligent misrepresentation); *J.A.O.*, 8 N.Y.3d at 148 (N.Y. negligent misrepresentation); *Stutman*, 95 N.Y.2d at 29-30 (N.Y. GBL Section 349 and 350 claims

---

[2] Defendants contend that Rule 9(b) applies to all of Plaintiffs' claims. Dkt. No. 34 at 23. Because Plaintiffs do not challenge the rule's application to all of their claims, the Court applies it to all of them.

[3] Plaintiffs' theory of unjust enrichment is based on Skillz's "unlawful and wrongful acts." FAC ¶¶ 235, 268, 304. Those claims therefore rise and fall with Plaintiffs' other claims.

do not require reliance but have causation element).

Skillz contends that Plaintiffs have not sufficiently alleged these and other necessary elements. As a threshold matter, they have sufficiently alleged some false or misleading statements. But Plaintiffs have not sufficiently alleged reliance or causation, so the Court need not examine whether Plaintiffs have adequately alleged the other elements of their claims. As regards Defendant's motion to dismiss their prayer for restitution, it too must be granted as Plaintiffs do not sufficiently allege that they lack an adequate remedy at law.

### 1.    False or Misleading Statement

Plaintiffs must allege with particularity under Rule 9(b) why the purported misrepresentations are false or misleading. *See Davidson*, 889 F.3d at 964 & n.2 (citations omitted). Additionally, they must plausibly allege deception, generally viewed from the standpoint of reasonable consumers. *See id.* at 964 n.2 (citation omitted). At issue are three buckets of representations: (1) that users will not compete against bots; (2) that users will be matched with equally skilled players; and (3) that users can easily withdraw winnings. Because Plaintiffs do not specifically allege the representations they saw, the Court limits its discussion to those shown to every user as part of the in-app badge. FAC ¶ 40.

Starting with the representations that users match with "real players" and have "no bots guaranteed," Plaintiffs sufficiently allege they are false and deceptive. According to Plaintiffs, Skillz incorporates bots in at least two circumstances: "(1) non-cash games called 'Z tournaments,' and (2) cash games 'when two human players compete against each other asynchronously.'" FAC ¶ 72. Taking that as true, there are circumstances where users play against bots, contrary to what Skillz represents. And it is plausible that a reasonable consumer could be deceived into thinking "no bots" meant they would never play against a bot. *See Skillz Platform Inc. v. Papaya Gaming, Ltd.*, No. 24-CV-1646-DLC, 2025 WL 438387, at *6 (S.D.N.Y. Feb. 7, 2025). While Skillz contends that a reasonable consumer would read the representations to only concern cash games, that is a question of fact not suitable for resolution on a motion to dismiss. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

That is also the case with regard to the representation that users match with "players of

equal skill." Plaintiffs allege that Skillz uses "skill band expansion, in which the pool of eligible opponents widened over time to include players of substantially different skill levels." FAC ¶ 63. Additionally, Plaintiffs allege that Skillz causes "periodic ratings resets, including a platform-wide reset of all player ratings in January 2024 (reversed by April 2024), which temporarily disrupted any meaningful skill-based matching." *Id.* Those allegations explain why the representation was misleading, since if true, there were circumstances where users were not matched with players of equal skill. And it is plausible that a reasonable consumer could be deceived into thinking that they will always be matched with a player of roughly equal skill. While Skillz contends that a reasonable consumer would understand that perfect skill matching is impossible, "a reasonable consumer may still be deceived by a physically impossible claim." *See Panelli v. Target Corp.*, 172 F.4th 1120, 1128 (9th Cir. 2026) (citation omitted) (finding "800 Thread Count" representation plausibly deceptive despite allegations that such a thread count is impossible). Indeed, a reasonable consumer could still plausibly expect that Skillz's matching algorithm always matches players within a rough skill bucket rather than sometimes matching players with substantially different skill levels.

However, the representation that users can make "easy withdrawals" is not actionable. Typically, representations that a product makes something "easy" constitute puffery because the concept is too generalized and subjective. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *28 (N.D. Cal. Aug. 30, 2017) (citation omitted); *Beaudry v. NOCO Co., Inc.*, No. 25-CV-01467-JST, 2025 WL 1828463, at *5 (N.D. Cal. July 2, 2025) (citations omitted). That is true here, as users would have varying subjective beliefs as to what constitutes an easy withdrawal.

### 2.    Reliance or Causation

As an initial matter, reliance and causation must be pled with particularity under Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). While Plaintiffs note that some district courts have held that reliance need only be plausibly alleged, those courts did not consider the Ninth Circuit's decision in *Kearns*. *See, e.g.*, *Waste & Compliance Mgmt., Inc. v. Stericycle, Inc.*, No. 17-CV-0967-DSM, 2017 WL 4358145, at *2 (S.D. Cal. Oct. 2, 2017) (citation omitted).

8

United States District Court
Northern District of California

Other courts have found that "*Kearns* is binding." *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 17-CV-4372-CRB, 2019 WL 5698339, at *1 (N.D. Cal. Nov. 4, 2019). Moreover, the proffered basis for a relaxed pleading standard—that Rule 9(b) says "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally"—is better read to refer to the *defendant's* state of mind. *See* Fed. R. Civ. P. 9(b).

Starting with the claims that require reliance in addition to causation (that is, all claims other than the RICO and New York GBL claims), a plaintiff "need not demonstrate that the defendant's misrepresentations were 'the sole or even the predominant or decisive factor influencing his conduct.'" *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 913 (N.D. Cal. 2020) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)). However, the representations must have at least "'played a substantial part' in the plaintiff's decision-making." *Id.* (quoting *In re Tobacco II*, 46 Cal. 4th at 326). That requires a plaintiff to allege "they actually read the challenged representations." *Id.* (citations omitted).

Plaintiffs do not specifically allege that they relied on or even read any particular representation. Most of the representations are allegedly located across Skillz's website and social media accounts, so it is not reasonable to infer that Plaintiffs must have seen them. *See* FAC ¶¶ 41-59, 113-15, 117. By contrast, the in-app badge has allegedly been displayed "in front of every single player, every time they launch a Skillz-powered application" since at least the beginning of 2024. *Id.* ¶¶ 39-40. Even so, that mandatory viewing "does not establish, standing alone, that Plaintiffs actually read the alleged misrepresentations." *See Williams*, 449 F. Supp. 3d at 914 (quoting *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1025 (N.D. Cal. 2013) and collecting cases). Beyond that, Plaintiffs do not sufficiently allege that the in-app badge was a substantial factor in their choice to play Skillz's games. *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (finding reliance insufficiently pled without allegations that the plaintiffs "purchased additional Camel cigarettes in reliance on the October 1 announcement"). Mitchell and Masiker began playing Skillz's games years before the in-app badge was allegedly first displayed. *See* FAC ¶¶ 16, 18, 40. As a result, their dearth of allegations regarding why they played Skillz's games leaves open the possibility that these representations were not a significant

factor in their decision to play. *See Cullen v. Netflix, Inc.*, No. 11-CV-01199-EJD, 2013 WL 140103, at *4 (N.D. Cal. Jan. 10, 2013); *Clark v. Hershey Co.*, No. 18-CV-06113-WHA, 2019 WL 6050763, at *3 (N.D. Cal. Nov. 15, 2019).

Turning next to the New York GBL Section 349 and 350 claims, a plaintiff must still plead that they read the representations to allege causation, even though reliance is not an element of those claims. *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 996-97 (N.D. Cal. 2016) (citations omitted); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1015 (N.D. Cal. 2024) (citation omitted). Thus, because Plaintiffs have not sufficiently alleged that they read any of the alleged misrepresentations, they have not adequately plead a claim under either New York GBL Section 349 or Section 350.

Finally, while reliance is not an element of a RICO claim premised on wire fraud, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 650 (2008), a plaintiff must still allege causation, which generally requires alleging that "*someone* in the chain of causation relied on [the] alleged misrepresentations and omissions." *Painters*, 943 F.3d at 1260; *see also Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004) (holding that reliance was a "milepost on the road to causation" to prove RICO claim based on misrepresentations allegedly leading to gambling losses (citation omitted)). Plaintiffs have not sufficiently done so. They allege that consumers "would not have paid [entry fees] but for the false representations." FAC ¶ 166(g). But as the Ninth Circuit noted in a similar case, "there may be no single, logical explanation for gambling—it may be an addiction, a form of escape, a casual endeavor, a hobby, a risk-taking money venture, or scores of other things." *Poulos*, 379 F.3d at 668. As a result, it may well be that the representations "did nothing to influence [users'] perceptions" or that users "played fully aware of how the [platform] operate[s]." *See id.* at 666. In fact, users had to launch a Skillz application before seeing the in-app badge, so they might have already decided to play before seeing the representations at issue here. *See* FAC ¶ 39. Without allegations about users' motivations, it is not reasonable to infer that the representations must have caused them to play. *Cf. Painters*, 943 F.3d at 1246-47, 1260 (holding plaintiffs sufficiently alleged that doctors relied on drug labeling).

### 3.    Equitable Jurisdiction for Restitution

In order to provide equitable relief, "a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313-14 (9th Cir. 2022) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843-44 (9th Cir. 2020)). As a result, a plaintiff seeking equitable remedies must "plead that they lack an adequate remedy at law." *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1013 (N.D. Cal. 2023).

In addition to damages, Plaintiffs seek the equitable remedy of restitution. FAC ¶¶ 194, 209, 238, 271, 307. But they fail to "allege why damages would be inadequate or provide any allegations about the adequacy of the various remedies." *See Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 774 (N.D. Cal. 2024). Plaintiffs make only two relevant allegations. First, their claims for unjust enrichment are pled in the alternative "to the extent that any agreement . . . between them and Skillz is found to be unenforceable . . . or otherwise inapplicable." FAC ¶¶ 233, 266, 302. Their legal claims do not depend on the enforceability of any agreement, though, so this does not explain why they might lack an adequate legal remedy. Second, Mitchell alleges as part of his unjust enrichment claim that "damages alone cannot prevent ongoing unjust enrichment." *Id.* ¶ 239. Without more, such an allegation is insufficient even at the pleadings stage. *See Castillo*, 748 F. Supp. 3d at 774 (citations omitted). Plaintiffs must therefore plead more to invoke equitable jurisdiction for restitution.

### D.    Leave to Amend

Courts dismissing a complaint should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts may deny leave to amend "only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). At this stage, the Court cannot determine as a matter of law that amendment would prove futile. Plaintiffs may be able to amend their complaint to correct the

11

deficiencies identified above. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."). Accordingly, the Court grants Plaintiffs leave to amend their complaint.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Skillz's motion to dismiss with leave to amend.  Plaintiffs **MAY** file an amended complaint no later than **August 21, 2026**.  No additional parties or claims may be added without leave of Court or stipulation of Skillz.

**IT IS SO ORDERED.**

Dated: July 31, 2026

ARACELI MARTÍNEZ-OLGUÍN
United States District Judge

*United States District Court*
*Northern District of California*